**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 11-1670

UNITED STATES OF AMERICA,

Appellee,

v.

SEBASTIAN RODRIGUEZ-CASTRO, a/k/a Sotero Mojica,
a/k/a Sotero Mojica-Laureano,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Boudin, Stahl, and Howard, Circuit Judges.

Patricia A. Garrity, Assistant Federal Public Defender, with whom Héctor E. Guzmán, Jr., Federal Public Defender, was on brief for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief for appellee.

September 7, 2012

**STAHL**, **Circuit Judge**.  After being convicted of alien smuggling and deported from the United States, defendant Sebastian Rodriguez-Castro (Rodriguez) unlawfully reentered this country and received a forty-six-month sentence under 8 U.S.C. §§ 1326(a) and (b)(2).  We find the sentence procedurally and substantively reasonable and therefore affirm.

## I. Facts & Background

Rodriguez, a native and citizen of the Dominican Republic, first came to Puerto Rico in 1996 and was deported in 2003.  On March 25, 2008, the United States Coast Guard apprehended Rodriguez, along with nine other undocumented immigrants, traveling on the open ocean toward Puerto Rico, on a nineteen-foot wooden yawl.  Rodriguez admitted to being the captain of the ship but maintained that he had not made the trip for profit.  Rather, he said, he and his fellow passengers had pooled funds in order to sail the ship to the United States.  A series of sworn statements from Rodriguez's fellow passengers, taken by officers from the Department of Homeland Security (DHS) and produced during discovery, generally corroborated Rodriguez's claims.

Rodriguez pled guilty to bringing in and harboring aliens, in violation of 8 U.S.C. § 1324(a)(1)(A)(i), and to aiding and abetting illegal entry, in violation of 8 U.S.C. § 1325.  Rodriguez's Presentence Investigation Report (PSR), dated July 29, 2008, recommended a three-level reduction in Rodriguez's offense

-2-

level because he had not committed the alien smuggling offense for profit.[1]  See U.S.S.G. § 2L1.1(b)(1).  Rodriguez received a sentence of ten months' imprisonment for the alien smuggling count and a sentence of six months' imprisonment for the aiding and abetting illegal entry count, to be served concurrently, along with three years of supervised release.  On February 12, 2009, Rodriguez was again deported from the United States.

On October 12, 2010, United States Immigration and Customs Enforcement agents conducted an immigration check at a barber shop in San Juan, Puerto Rico and found Rodriguez there.  He was detained and charged with unlawful reentry after having been deported for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  Rodriguez pled guilty, without a plea agreement.  A subsequent PSR recommended a base offense level of eight, see U.S.S.G. § 2L1.2(a), and a sixteen-level enhancement because Rodriguez had previously been convicted of alien smuggling, see id. § 2L1.2(b)(1)(A)(vii).  The PSR also recommended a three-

---

[1] Rodriguez has not provided us with the transcript from his sentencing hearing for the 2008 alien smuggling offense, so we do not know whether the district court ultimately applied the three-level reduction.  Nor has he made clear whether he submitted a copy of that transcript or a copy of the 2008 PSR to the district judge who sentenced him for the 2010 unlawful reentry offense.  Thus, we do not know whether the sentencing judge for the 2010 unlawful reentry offense was aware that the Probation Office had recommended the three-level reduction in the 2008 alien smuggling case.  Rodriguez did submit, both to us and to the sentencing judge for the 2010 unlawful reentry offense, the sworn statements from his fellow passengers taken by DHS.

level downward adjustment for acceptance of responsibility, see id. § 3E1.1, resulting in a total offense level of twenty-one. The PSR assigned Rodriguez two criminal history points for the prior alien smuggling conviction, see id. § 4A1.1(b), and another two points because he had committed the unlawful reentry offense while on supervised release, see id. § 4A1.1(d). That yielded a Criminal History Category of III, which, when combined with the offense level of twenty-one, resulted in a guideline sentencing range of forty-six to fifty-seven months. On May 10, 2011, the district court imposed a forty-six-month sentence and three years of supervised release.

## II. Discussion

We review Rodriguez's challenge to that sentence for procedural and substantive reasonableness. See, e.g., United States v. Leahy, 668 F.3d 18, 21 (1st Cir. 2012). We begin by determining whether the district court committed any procedural errors, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence--including an explanation for any deviation from the Guidelines range." Gall v. United States, 552 U.S. 38, 51 (2007). Our overall review of the district court's sentencing procedure is for abuse of discretion, but we review the court's

interpretation of the sentencing guidelines de novo and its factual findings for clear error. See, e.g., Leahy, 668 F.3d at 21. If we determine that the district court followed the correct procedure, we will uphold the sentence "unless it 'falls outside the expansive boundaries' of the universe of reasonable sentences." United States v. Zapata, 589 F.3d 475, 486 (1st Cir. 2009) (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)).

## A. Procedural reasonableness

Rodriguez essentially raises three claims of procedural error, all predicated upon the court's decision to apply section 2L1.2(b)(1)(A)(vii) of the federal sentencing guidelines, which recommends a sixteen-level enhancement "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . an alien smuggling offense." U.S.S.G. § 2L1.2(b)(1)(A)(vii).

Rodriguez's first argument is that the district court treated section 2L1.2(b)(1)(A)(vii) as mandatory, or at the very least as presumptively reasonable, in violation of Gall, 552 U.S. 38, and United States v. Booker, 543 U.S. 220 (2005). The record belies that claim. The court gave Rodriguez's counsel ample opportunity to press his arguments and made a variety of statements that indicated a clear awareness that it was not bound by the guideline. For example, the court asked Rodriguez's counsel to explain why "the 16 points should not be considered, even

-5-

advisory?" (emphasis added). The court also said things like "I think that [Rodriguez] should be treated like an alien smuggler, and the 16 points should be added," and "We're going to [apply the enhancement] . . . I'm sorry," and "I am going to grant the 16 points." As we read the sentencing transcript, the court understood its discretion to depart or vary from the guideline but felt that the guideline was reasonable in this particular case.

Rodriguez's second (and related) claim is that the district court specifically failed to acknowledge its discretion to disagree with section 2L1.2(b)(1)(A)(vii)'s sixteen-level enhancement on policy grounds. Before the district court, Rodriguez did make a somewhat cursory argument that section 2L1.2(b)(1)(A)(vii) was not the product of empirical research by the United States Sentencing Commission and that the court therefore should not follow it pursuant to Kimbrough v. United States, 552 U.S. 85 (2007), which "makes manifest that sentencing courts possess sufficient discretion under section 3553(a) to consider requests for variant sentences premised on disagreements with the manner in which the sentencing guidelines operate," United States v. Rodríquez, 527 F.3d 221, 231 (1st Cir. 2008). See also United States v. Stone, 575 F.3d 83, 89 (1st Cir. 2009) ("[A]fter Kimbrough, a district court makes a procedural error when it fails to recognize its discretion to vary from the guideline range based on a categorical policy disagreement with a guideline."). Section

-6-

2L1.2 is not without its critics,[2] but "the mere fact that a sentencing court has the discretion to disagree with the guidelines on policy grounds does not mean that it is required to do so." United States v. Ekasala, 596 F.3d 74, 76 (1st Cir. 2010) (internal citation omitted); see also Stone, 575 F.3d at 90 ("[T]he district court's broad discretion obviously includes the power to agree with the guidelines."). The district court here made no "clear statement showing Kimbrough error"; in other words, the court never expressed a belief that it lacked discretion to disagree with the guideline on policy grounds. Stone, 575 F.3d at 91. We therefore "review the record as a whole to assess the district court's sentencing process." Id.

Though Rodriguez put little emphasis on his Kimbrough argument at the sentencing hearing,[3] the record indicates that the district court considered his argument and instead chose to agree with the guideline, which was within its discretion. Id. at 90. The court articulated a clear belief that the sixteen-level enhancement was proper not just as a general policy matter but also in Rodriguez's particular case. For example, when Rodriguez's

---

[2] See, e.g., United States v. Torres-Gomez, No. 11–CR–237, 2012 WL 1424705, at *3 (E.D. Wis. Apr. 24, 2012) (collecting cases).

[3] As discussed below, Rodriguez's primary argument at sentencing was that the district court should ignore the guideline entirely, or grant a downward departure, because Rodriguez had not committed the prior alien smuggling offense for profit.

counsel complained that section 2L1.2(b)(1)(A)(vii) was "really stiff," the court responded, "It's meant to be stiff." When Rodriguez's counsel suggested that the enhancement overstated the seriousness of Rodriguez's prior offense, the court responded, "I don't think so. I think that what happened before was pretty serious." We find no evidence that the district court failed to appreciate its Kimbrough power. Stone, 575 F.3d at 90-93.

Rodriguez's third broad claim of procedural error is that the district court failed to follow the strictures of 18 U.S.C. § 3553 in imposing his forty-six-month sentence. Specifically, he argues that the court did not offer an adequate explanation for his sentence or consider non-frivolous arguments in favor of a downward departure.

We begin with the court's explanation of Rodriguez's sentence, which, while not a model of thoroughness, was adequate. The court described the prior alien smuggling offense as "pretty serious," emphasized that Rodriguez had been given what the court considered "a very light sentence" for that offense, and expressed particular concern about the fact that, when Rodriguez unlawfully reentered the United States in 2010, he was still on supervised release for the 2008 offense, which the court viewed as "another confirmation of the fact that you have little respect for the law." The court ultimately imposed a sentence at the bottom of the guideline range, describing that as "the fair thing to do," but

emphasized that the "case would have easily, easily allowed for a 57 month sentence," at the top of the range. Particularly where a defendant receives a sentence within the guideline range, as was the case here, the district court's explanation of the sentence need not "be precise to the point of pedantry," United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006), and "brevity is not to be confused with inattention," id. at 42. See also Rita v. United States, 551 U.S. 338, 356 (2007) ("[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation."). The fact that the district court did not explicitly mention the 18 U.S.C. § 3553(a) sentencing factors is not a ground for reversal, since the court clearly considered those factors and provided an adequate rationale for the sentence. See, e.g., United States v. Brandao, 539 F.3d 44, 65 (1st Cir. 2008).

The district court's above-described findings at sentencing also demonstrate that the court considered Rodriguez's arguments in favor of a downward departure under Application Note 7 to section 2L1.2, which provides that "[t]here may be cases in which the applicable offense level substantially overstates or understates the seriousness of a prior conviction" and that a departure might be warranted in such an instance. U.S.S.G. § 2L1.2 cmt. n.7. The court spent a good deal of time listening to Rodriguez's arguments in favor of a downward departure but

ultimately denied the request, concluding: "I see the point, but I don't see anything in this record that would allow me to say that what happened previously overstates the seriousness of what indeed happened."  The court expressed its belief that Rodriguez's prior crime was a serious one, that he had not been adequately punished for it, that he had demonstrated "little respect for the law" by unlawfully reentering while on supervised release, and that section 2L1.2(b)(1)(A)(vii)'s "stiff" punishment was appropriate.  The court's discretionary decision not to depart was reasonable. United States v. Battle, 637 F.3d 44, 51-52 (1st Cir. 2011).

We pause, however, to note one misstep on the district court's part.  Rodriguez's main argument in favor of a downward departure was that he had not committed the 2008 alien smuggling offense for profit and thus that his offense level substantially overstated the seriousness of his prior conviction.[4]  See  U.S.S.G.

_____

[4] Rodriguez also argued below that the district court should not follow section 2L1.2(b)(1)(A)(vii) in the first place, because the United States Sentencing Commission did not intend for the sixteen-level enhancement to apply to individuals who commit an alien smuggling offense not-for-profit. Rodriguez has not squarely raised that argument on appeal, so we need not address it here, but we note that the plain language of the guideline does not make such a distinction.  Though a defendant who has committed an alien smuggling offense "other than for profit" receives a three-level reduction in his base offense level under U.S.S.G. § 2L1.1(b)(1), he does not appear to be eligible for any special treatment if he later unlawfully reenters the country and finds himself subject to section 2L1.2(b)(1)(A)(vii).  Section 2L1.2(b)(1)(A)(vii) directs the district court to apply the sixteen-level enhancement if the defendant was previously convicted of any alien smuggling offense that was not committed for the purpose of assisting a spouse, child, or parent.  See id. § 2L1.2(b)(1)(A)(vii) (prescribing a

§ 2L1.2 cmt. n.7.  The court responded, in part, by rejecting the mere possibility that Rodriguez might not have been paid for his role in the alien smuggling operation, repeatedly making statements like, "Money's always involved when you have these ventures."  The court should not have made such an assumption, well-founded though it may have been, especially given that Rodriguez had submitted the sworn statements prepared by DHS in support of his claims that he had not committed the offense for profit, that multiple individuals had taken turns operating the vessel, and that he and the other passengers had pooled their money to pay for the trip.  The court was free to find Rodriguez's evidence insufficient,[5] but it was not appropriate for the court to seemingly disregard that evidence in favor of generalizations about Rodriguez's prior crime.

But we need not decide whether that misstep constituted a "clear error," see, e.g., Leahy, 668 F.3d at 21, or, in other words, whether based "on the entirety of the evidence, we are left with the definite and firm conviction that a mistake has been

---

sixteen-level increase for "an alien smuggling offense"); id. cmt. n.1(B)(i) (describing an "alien smuggling offense" as having "the meaning given that term in section 101(a)(43)(N) of the Immigration and Nationality Act"); 8 U.S.C. § 1101(a)(43)(N) (defining the term "aggravated felony" to include any alien smuggling offense described in 8 U.S.C. §§ 1324(a)(1)(A) or (a)(2) "except . . . a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter").

[5] See supra note 1.

committed," United States v. Valdivia, 680 F.3d 33, 53 (1st Cir. 2012). Even assuming arguendo that a clear error occurred here, there is no need for reversal, because there is no evidence that the district court denied the downward departure or otherwise formulated the sentence in reliance on its assumption that Rodriguez had committed the alien smuggling offense for profit. Rather, as discussed above, the record indicates that the court chose the within-guideline sentence and denied the downward departure based on Rodriguez's recidivism and apparent lack of respect for the law. Any error did not affect the district court's selection of the sentence and was therefore harmless. See, e.g., United States v. McGhee, 651 F.3d 153, 158 (1st Cir. 2011); cf. United States v. Kinsella, 622 F.3d 75, 86 (1st Cir. 2010) ("[I]f the judge makes incorrect findings but the record still supports the end result, the error is harmless and no remand is needed.").

**B. Substantive reasonableness**

Rodriguez's final claim is that his sentence is substantively unreasonable because the district court reached it by applying section 2L1.2(b)(1)(A)(vii), which Rodriguez alleges was developed without a proper empirical basis, treats broad classes of crimes the same way, produces unwarranted sentencing disparities, and is unduly harsh. That is a Kimbrough argument dressed up as a claim of substantive unreasonableness, and we will not consider it. Rodriguez presented his Kimbrough argument to the district court,

and the court agreed with the guideline, which was within its discretion. Stone, 575 F.3d at 90. Kimbrough gives district courts the leeway to disagree with a sentencing guideline on policy grounds should they so choose; it "does not force district or appellate courts into a piece-by-piece analysis of the empirical grounding behind each part of the sentencing guidelines." United States v. Duarte, 569 F.3d 528, 530 (5th Cir. 2009); cf. United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (holding that "the discretion to vary under Kimbrough is not tantamount to an obligation to do so").

To be sure, section 2L1.2(b)(1)(A)(vii)'s enhancement resulted in a lengthy sentence for Rodriguez, particularly given that he had received only ten months for the prior alien smuggling offense and that there was some evidence that he had not committed that offense for profit. Sitting as a court of first instance, we might not have imposed the same sentence, but that is not a basis for reversal. United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011). The district court followed the correct sentencing procedure, and the within-guideline sentence that the court ultimately chose was not "outside the expansive boundaries of the universe of reasonable sentences." Zapata, 589 F.3d at 486.

### III. Conclusion

Finding no reversible error, we affirm.