# United States Court of Appeals
## For the First Circuit

No. 06-2532

UNITED STATES OF AMERICA,

Appellee,

v.

ROY LEWIS ROGERS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,
and Oberdorfer,[*] Senior District Judge.

Wayne R. Foote with whom Law Offices of Wayne R. Foote, PA was on brief for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

March 25, 2008

---

[*]Of the District of Columbia, sitting by designation.

**OBERDORFER, Senior District Judge.** Roy Lewis Rogers appeals his conviction and sentence for one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). He challenges the district court's denial of his motion to suppress evidence, arguing that the police exceeded the scope of their search warrant authorizing them to search for "photos of [a minor child]" when they seized and later viewed a videotape. He also contends that pursuant to § 5G1.3(b) of the federal Sentencing Guidelines, the district court should have ordered his entire federal sentence of imprisonment to run concurrently to his undischarged state sentence. Finding no error in the denial of Rogers' motion to suppress or at sentencing, we affirm.

## I. BACKGROUND

### A. Facts

In 2004, Detective James Skehan of the Houlton, Maine Police Department began investigating Rogers' relationship with a fourteen-year-old child ("DW"), whose mother was a friend of Rogers. Based on the information he learned during his investigation, Skehan believed that Rogers had subjected DW to unlawful sexual advances. Skehan also believed that Rogers had communicated with DW via e-mail and that DW's mother had given Rogers several photos of DW.

On July 21, 2004, based on a lengthy affidavit summarizing his investigation, Skehan requested a warrant to search Rogers'

apartment. A state justice of the peace issued the warrant (the "first search warrant"). Although Skehan had sought permission to search for a variety of computer equipment and electronic-data-storage devices, the issued warrant simply authorized a search for a "Computer belonging to Roy Rogers. (Unk Brand, Color, Serial Numbers etc). Also any photos of [DW]." Appendix ("App.") at 26.

While executing the search warrant, the officers (including Skehan) saw in Rogers' bedroom two unlabeled videotapes lying on the table next to his computer. Also on the table, about a foot away from the videotapes, was a piece of paper with DW's name on it. The officers seized the videotapes and the computer. During the search the officers saw, but did not seize, other videotapes, a video camera, DVDs, computer floppy disks and other electronic-data-storage devices.

After Skehan returned to the police station, he and an Assistant District Attorney watched one of the videotapes. It showed Rogers having sexual intercourse with a nine-year-old relative (Child A) and also showed the child engaging in other sexually explicit conduct at Rogers' direction. Based on that evidence, on July 22, 2004, Skehan sought and obtained a search warrant (the "second search warrant") to search Rogers' apartment for:

> 1. Video recorders, videotapes, cameras, photographs, negatives, letters, and any recording media that could be used to record sexual encounters, or to duplicate or

transmit or distribute recordings of sexual encounters, including but not limited to:

> A) Any computers and electronic data storage or retrieval devices found at the residence as described in section 1, above;
>
> B) Any computer records or data, whether in electronic or printed form, that are evidence of possession, ownership or control of the property/items to be seized, or that are evidence of the identity of any person(s) who possessed, owned or controlled such property/items;

All of which are evidence of the crimes of Gross Sexual Assault (17-A M.R.S.A. § 253), and which may also be evidence of the crimes of Dissemination of Sexually Explicit Materials (17 M.R.S.A. § 2923) and Sexual Exploitation of a Minor (17 M.R.S.A. § 2922), or other similar State or Federal Offense.

2. Bedding depicted in the video including a blue floral comforter.

3. Clothing depicted in the video including blue, po[l]kadotted underwear, slit on the sides.

App. 28-29. The police executed the second warrant immediately.

Later that same day, the police questioned Rogers. Confronted with the contents of the videotape of Child A, he made several incriminating statements, including that his computer contained child pornography downloaded from the Internet. The police then searched Rogers' computer and the other seized items. They discovered a videotape showing another minor child (Child B) engaged in sexually explicit conduct with Rogers present and recovered 57 images of child pornography from Rogers' computer.

-4-

**B.    Procedural History**

On the basis of the above-described evidence, prosecutors indicted and convicted Rogers in both state and federal court.  We describe the state proceedings only insofar as they are relevant to the issues raised by the pending federal appeal.

**1.    State Indictment and Conviction**

On September 9, 2004, the State of Maine indicted Rogers in a six-count indictment, charging him with sexual offenses against Child A, Child B and DW (identified as Child C).  Pursuant to a plea agreement, he pled guilty to, and was convicted of, four of the six counts: (1) "gross sexual assault" in violation of 17-A M.S.R.A. § 253(1)(B), based on his having engaged in a "sexual act" with Child A, a minor under the age of 14 (Count 1); (2) two counts of "sexual exploitation of a minor" in violation of 17 M.R.S.A. § 2922(1)(A) (now 17-A M.R.S.A. § 282), based on his having caused Child A and Child B to engage in "sexually explicit conduct" "knowing or intending that the conduct would be photographed" (Counts 2 and 4); and (3) "sexual abuse of a minor" in violation of 17-A M.R.S.A. § 254(1)(A-2), based on his having engaged in a "sexual act" with DW (Child C), a minor who was 14 or 15 and at least 10 years younger than he (Count 6).  The State dismissed the remaining two counts.

On July 28, 2005, the state court sentenced Rogers as follows: (1) for Count 1, 15 years imprisonment, with all but six years

suspended, followed by four years of probation; (2) for Count 2, nine years imprisonment, all suspended, with three years probation, all to be served consecutively to Count 1; (3) for Court 4, 364 days imprisonment, to be served concurrently with Count 1; (4) and for Count 6, 364 days imprisonment, to be served concurrently with Count 1.

## 2. Federal Court Indictment and Conviction

On July 12, 2005, a few weeks before the state court imposed its sentence, a federal grand jury indicted Rogers for one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The indictment charged that "on or about July 22, 2004, in the District of Maine," Rogers had "knowingly possessed a computer that contained an image of child pornography, specifically a computer graphic image the production of which involved the use of a minor engaging in sexually explicit conduct, that had been transported in interstate and foreign commerce, specifically by computer via the Internet."[1] App. 31. The federal charge was

---

[1]At that time, § 2252A(a)(5)(B) made it a crime to

knowingly possess any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer.

18 U.S.C. § 2252A(a)(5)(B).

based solely on Rogers' possession of the images found on his computer, not on his sexual abuse and exploitation of the three minor children.

### a. Federal Court Motion to Suppress

Rogers filed a motion to suppress all of the evidence discovered after the issuance of the first search warrant – the videotapes, the pornographic images discovered on his computer, and his incriminating statements. He argued that the first search warrant's authorization to search for and seize "photos of DW" encompassed solely developed print photographs and not images on a videotape or on a computer. He further argued that because the contents of the first videotape provided the basis for the second search warrant, everything discovered and seized pursuant to the second warrant should be suppressed as "fruit of the poisonous tree."

A magistrate judge recommended denying the motion to suppress. She concluded that "searching the computer hard drive and the videotape for photos of DW was well within the scope of the warrant" because both were "plausible repositories" for "photos of DW." App. 12. She reasoned that "[g]iven the current state of technology, looking at a computer's hard drive to find photos is no more inappropriate than opening a photo album" and that "[c]urrent technology also permits 'photos' to be stored on homemade videotapes." Id. Over Rogers' objection, the district court

-7-

adopted the magistrate's report and recommendation in its entirety. App. 14-15.

### b.    Guilty Plea and Sentencing

On June 13, 2006, pursuant to a plea agreement, Rogers pled guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  However, he reserved the right to appeal the denial of his motion to suppress.  See Fed. R. Crim. P. 11(a)(2).

At the sentencing hearing, applying the 2003 version of the federal Sentencing Guidelines, the district court determined that Rogers had an offense level of 30, a criminal history category of I, and a sentencing guideline range of 97-120 months imprisonment. The court imposed the maximum sentence of 120 months imprisonment, but ordered that Rogers "receive credit for the state conduct used to enhance his federal guideline range," which the court "determine[d] . . . to be 1 year, resulting in a sentence of 108 months, to be served consecutive to any undischarged term of imprisonment being served with the State of Maine Docket CR04-98." App. 2.

At the sentencing hearing, Rogers had contended that under Guideline § 5G1.3(b), his entire federal sentence should run concurrently to his undischarged state sentence.  See U.S.S.G. § 5G1.3(b) (2003).  The district court disagreed, ruling that § 5G1.3(c), not § 5G1.3(b), applied to Rogers' case.  Exercising its

discretion under § 5G1.3(c), it ordered that all but 12 months of Rogers' 120-month sentence run consecutively to his undischarged state sentence.

## II.  DISCUSSION

On appeal, Rogers challenges the district court's denial of his motion to suppress and its refusal to order that his entire federal sentence run concurrently under § 5G1.3(b) of the federal Sentencing Guidelines.

## A.  Motion to Suppress

Rogers argues that the seizure and search of the videotape exceeded the scope of the first search warrant because the warrant's reference to "photos of DW" should be read as limited to developed print photographs.  "In reviewing the district court's denial of a motion to suppress, 'we accept the trial court's findings of fact unless they are clearly erroneous and subject its conclusions of law to *de novo* review.'" United States v. Mousli, 511 F.3d 7, 11 (1st Cir. 2007) (quoting United States v. Coplin, 463 F.3d 96, 100 (1st Cir. 2006)).  As there are no facts in dispute, we review de novo the district court's ruling that the seizure and search of the videotape fell within the scope of the first search warrant.

The Fourth Amendment prohibits the issuance of any warrant except one "particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "Any

-9-

search intruding upon [an individual's] privacy interest must be justified by probable cause and must satisfy the particularity requirement, which limits the scope and intensity of the search." United States v. Bonner, 808 F.2d 864, 867 (1st Cir. 1986). "When investigators fail to limit themselves to the particulars in the warrant, both the particularity requirement and the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity." See Mousli, 511 F.3d at 12 (internal quotations omitted); see also United States v. Upham, 168 F.3d 532, 536 (1st Cir. 1999) ("It is settled law that the search and seizure conducted under a warrant must conform to the warrant.").

Furthermore, "[a]s a general proposition, any container situated within residential premises which are the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." United States v. Gray, 814 F.2d 49, 51 (1st Cir. 1987) (citing United States v. Ross, 456 U.S. 798, 820-21 (1982)); see also United States v. Giannetta, 909 F.2d 571, 577 (1st Cir. 1990); United States v. Doherty, 867 F.2d 47, 65-66 (1st Cir. 1989). In determining whether it is reasonable to search a particular container for an object, "search warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided." See Bonner, 808 F.2d at 868 (citing

<u>Spinelli</u> v. <u>United States</u>, 393 U.S. 410, 419 (1969)); <u>United States</u> v. <u>Syphers</u>, 426 F.3d 461, 465 (1st Cir. 2005); <u>United States</u> v. <u>Baldyga</u>, 233 F.3d 674, 683 (1st Cir. 2000).

In the instant case, the critical question is whether it is reasonable to believe that a videotape could contain "photos of DW." Rogers argues that the term "photos" – at least in this case – clearly means "developed print photographs" and, therefore, that it was not reasonable for the officers to search the videotape for "photos of DW." The government responds, echoing the magistrate judge's analysis, that given the current state of technology, the term "photos" reasonably includes images captured on videotapes or by a digital camera.

We are persuaded that the government's argument must prevail. As the magistrate judge pointed out, given the state of technology, a videotape is a plausible repository for a photo. To adopt the narrowest definition of "photos," as Rogers proposes, would, we believe, ignore our obligation to read the warrant and affidavit in a common sense manner and avoid hypertechnical definitions. The affidavit submitted in support of the warrant application stated that DW's mother "said that [Rogers] has several photos of [DW] at his apartment" and that "he had asked her for copies of the ones she had." Gov't Addendum at 1. Based on that information, the warrant authorized the seizure of all "photos of DW." Given these facts, we conclude that it is reasonable to believe that in the

circumstances here the two seized videotapes could contain "photos of DW." Accordingly, the seizure and subsequent search of the videotape did not exceed the scope of the first search warrant. It follows (and Rogers does not argue to the contrary) that there is no basis for suppressing any of the evidence discovered thereafter. Accordingly, we conclude that the district court did not err in denying Rogers' motion to suppress the videotape.

The district court also ruled that the first search warrant authorized a search of the computer for images. However, in fact, the search of the computer for images did not occur until after the officers obtained the second search warrant. It clearly authorized such a search. Therefore, we need not decide whether the first search warrant alone would have permitted a search of a computer's image files.

## B. Application of Sentencing Guidelines § 5G1.3(b)

On appeal, Rogers argues that the district court erred in refusing to apply Guideline § 5G1.3(b) and order that his entire federal sentence run concurrently to his undischarged state sentence.

"In a case in which a defendant is subject to an undischarged term of imprisonment, the court generally has authority to impose an imprisonment sentence on the current offense to run concurrently with or consecutively to the prior undischarged term." U.S.S.G. § 5G1.3, cmt. background (citing 18 U.S.C. § 3584(a)); see United

-12-

<u>States</u> v. <u>Caldwell</u>, 358 F.3d 138, 143 (1st Cir. 2004).  "Exercise of that authority, however, is predicated on the court's consideration of the factors listed in 18 U.S.C. § 3553(a), including any applicable guidelines or policy statements issued by the Sentencing Commission."  U.S.S.G. § 5G1.3, cmt. background; <u>see</u> 18 U.S.C. § 3584(b); <u>Caldwell</u>, 358 F.3d at 143.

Section 5G1.3 of the Guidelines addresses the "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment."  U.S.S.G. § 5G1.3.  Part (a) specifies when consecutive sentences are required; part (b) specifies when concurrent sentences are required; and part (c) covers "any other case" and gives the district court the discretion to impose sentence concurrently, partially concurrently or consecutively, "to achieve a reasonable punishment for the instant offense."  <u>Id</u>. § 5G1.3(a)-(c).

Rogers argues on appeal, as he did before the district court, that his case is covered by § 5G1.3(b), which, in the 2003 version of the Guidelines, provided:

> If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:
>
> > (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the

-13-

> court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

"Thus, § 5G1.3(b) provides for an adjustment in sentence only where the undischarged sentence was (1) for a crime that constitutes relevant conduct for the instant offense and (2) was the basis for an increase in the offense level for the instant offense under Chapters Two or Three of the Guidelines."  See United States v. Lino, 493 F.3d 41, 44 (2007).

We begin, therefore, with an examination of how Rogers' state offenses impacted the determination of his guideline offense level. Determining Rogers' offense level was a multi-step process. First, under the 2003 Guidelines, § 2G2.4 provided the base offense level for a violation of 18 U.S.C. § 2252A(a)(5)(B).  U.S.S.G. § 2G2.4 (2003).  However, § 2G2.4(c)(1) provided that "[i]f the offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," § 2G2.1 applies.  Id. § 2G2.4(c)(1).  Under the Guidelines, a defendant's "offense conduct" includes both the conduct underlying the specific federal charges – here, the 57 pornographic images on Rogers' computer – and all "relevant conduct."  Id. § 1B1.3.  In Rogers' case, the district court treated his possession of the videotapes of Child A and Child B as

-14-

"relevant conduct." Because the videotapes satisfied the requirements of § 2G2.4(c)(1), the district court looked to § 2G2.1 to determine Rogers' offense level. In the 2003 Guidelines, § 2G2.1 had a base offense level of 27. Applying a four-level increase because "the offense involved a victim who had . . . not attained the age of twelve years," id. § 2G2.1(b)(1)(A), a two-level increase because "the defendant was a . . . relative . . . of the minor involved in the offense," id. § 2G2.1(b)(2), and a three-level decrease for acceptance of responsibility, id. § 3E1.1, resulted in Rogers's total offense level of 30.

Rogers contends that because the "videotapes" were treated as "relevant conduct," his case falls under § 5G1.3(b). However, § 5G1.3(b) requires both that the other offense be "relevant conduct" and that it "was a basis for an increase in the offense level for the instant offense." U.S.S.G. § 5G1.3(b). Here, the only state offenses that were considered "relevant conduct" and affected Rogers' federal offense level were his convictions for sexual exploitation of a minor (Counts 2 and 4). Those convictions were based on the fact that he videotaped Child A and Child B engaging in sexually explicit conduct, precisely the same conduct that resulted in the cross-reference to § 2G2.1, and the final offense level of 30. Rogers' offenses of gross sexual assault of Child A (Count 1) and sexual abuse of Child C (Count 6) were not considered "relevant conduct," and, even if they had been, did not impact the

-15-

determination of Rogers' federal offense level.  Accordingly, the district court did not err in concluding that § 5G1.3(b) did not apply.

Having rejected the application of § 5G1.3(b), the district court applied § 5G1.3(c). Section 5G1.3(c) provides:

> (Policy Statement)  In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3(c). The application notes to subsection (c) provide that in a "complex case" where the defendant is "subject to multiple undischarged terms of imprisonment that seemingly call for the application of different rules," the court is to "exercise its discretion in accordance with subsection (c) to fashion a sentence of appropriate length and structure it to run in any appropriate manner to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G.3, cmt. n.3 (2003).  That is precisely what the district court here did, giving Rogers 1 year of credit for time served on the state offenses that affected his federal offense level, but ordering that the remaining 108 months be served consecutively to his undischarged state sentence.  Indeed, Rogers concedes that if the district court did not err in not applying § 5G1.3(b), his sentence comports with the Guidelines.

Accordingly, we find no error in Rogers' sentence.

## III.  CONCLUSION

For the reasons stated in the foregoing opinion, we affirm.