# United States Court of Appeals
## For the First Circuit

No. 18-1883

UNITED STATES OF AMERICA,

Appellee,

v.

MOHAMAD HASSAN-SALEH-MOHAMAD,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

José B. Vélez Goveo and Vélez & Vélez Law Office on brief for appellant.

Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, Antonio L. Perez-Alonso, Assistant United States Attorney, and Rosa Emilia Rodríguez-Vélez, United States Attorney, on brief for appellee.

July 9, 2019

**LYNCH**, **Circuit Judge**.  Mohamad Hassan-Saleh-Mohamad ("Hassan") pleaded guilty to possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).  He now challenges the procedural and substantive reasonableness of his within-guidelines sentence of eighty-seven months' imprisonment and fifteen years' supervised release.  Finding no abuse of discretion, we affirm his sentence.

## I.

We recount only the central facts in this section, providing more detail as necessary in the analysis.  As Hassan's appeal follows a guilty plea, "we draw the relevant facts from the plea agreement, the change-of-plea colloquy, the undisputed portions of the presentence investigation report ('PSR'), and the transcript of the disposition hearing." United States v. O'Brien, 870 F.3d 11, 14 (1st Cir. 2017).

A.  Federal Investigation, Child Pornography Charge, and Plea

During a Federal Bureau of Investigation (FBI) investigation into the distribution of child pornography on the Ares peer-to-peer file-sharing network in November 2016, an FBI agent identified a computer with a particular Internet Protocol (IP) address as a potential source of child pornography.  The agent began investigating this computer and downloaded two video files

made available by the targeted computer, both of which contained child pornography.[1]

An administrative subpoena on the cable company connected to the IP address of that computer returned an address in Puerto Rico. The FBI then executed a search, pursuant to a warrant, of the residence at that address on March 31, 2017, and interviewed all of the residents, including Hassan. In this interview, Hassan stated that he had used his computer to search the Ares peer-to-peer network for child pornography and had downloaded about fifty child pornography videos and images in the past year. A search of Hassan's hard drive found six images and 335 videos of minors engaged in sexual conduct, including some featuring sadomasochistic acts and prepubescent minors.

On April 25, 2018, a criminal information was filed, charging Hassan with one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). That same day, Hassan pleaded guilty to this count pursuant to a plea agreement. The plea agreement stated a Base Offense Level (BOL) of eighteen and a number of sentencing adjustments, leading to a Total Offense Level (TOL) of twenty-five. The parties did not

---

[1] The two videos showed: 1) a partially nude female approximately between the ages of ten and twelve performing oral sex on a nude adult male; 2) a female approximately between the ages of fourteen and eighteen masturbating a male between the ages of five and eight and then performing oral sex on him.

stipulate to a Criminal History Category (CHC).  The plea agreement stated that Hassan could argue for a sentence of fifty-seven months' imprisonment, and the government could argue for seventy-one months.  Hassan agreed to waive his right to appeal if the sentence imposed was seventy-one months or less.

B.   Sentencing

The Probation Office filed an amended PSR which applied a five-level rather than two-level enhancement for the number of images possessed by Hassan,[2] leading to a TOL of twenty-eight.[3] The PSR stated a CHC of I for Hassan.  This TOL and CHC led to a guideline sentencing range (GSR) of seventy-eight to ninety-seven

---

[2]     The PSR considered the number of images as "more than 600," corresponding to the highest level-enhancement for number of images under § 2G2.2.   See U.S.S.G. § 2G2.2(b)(7).   That is because, corresponding to an Application Note to this guideline, the 322 child pornography videos were considered to contain 24,150 images in total.  See id. § 2G2.2 n.6(B)(ii) ("Each video, video-clip, movie, or similar visual depiction shall be considered to have 75 images.").  We are not told why the plea agreement listed 335 videos rather than 322; the exact number is not relevant on appeal.

[3]     The level adjustments were:
- a two-level increase for material involving pre-pubescent minors, U.S.S.G. § 2G2.2(b)(2);
- a four-level increase for material depicting sadistic or masochistic conduct, id. § 2G2.2(b)(4);
- a two-level increase for the use of a computer in the offense, id. § 2G2.2(b)(6);
- a five-level increase for the number of images, id. § 2G2.2(b)(7); and
- a three-level reduction for acceptance of responsibility, id. § 3E1.1.

Hassan did not and does not dispute the factual basis of any of the enhancements.

months.   Hassan filed a sentencing memorandum arguing for a sentence of fifty-seven months; he did not challenge facts in the PSR.   Instead, he more generally challenged the sentencing guidelines related to child pornography and sought a downward variance based on the district court's discretion to disagree with specific guidelines, recognized in Kimbrough v. United States, 552 U.S. 85 (2007).

At the sentencing hearing, Hassan argued again for a sentence of fifty-seven months' imprisonment; pursuant to the plea agreement, the government argued for a sentence of seventy-one months' imprisonment.  After discussing, inter alia, the GSR, the sentencing enhancements, certain facts of the offense, and some characteristics of the defendant, the district court imposed a sentence of eighty-seven months' imprisonment and fifteen years' supervised release. Near the end of the sentencing hearing, Hassan's counsel stated generally, "we would preserve the record for purposes of an appeal for unreasonableness of the sentence."

## II.

Hassan now challenges both the procedural and substantive reasonableness of his sentence.[4]  "In sentencing

_____

[4]   The plea agreement contained a waiver of appeal provision.  It is not applicable here because Hassan received a prison sentence greater than seventy-one months, and the government does not argue otherwise.  See United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010) ("A waiver-of-appeal provision is enforceable according to its terms.").

appeals, appellate review is bifurcated," United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015), and so we proceed in two familiar steps: "We first consider whether the sentence is procedurally reasonable, and then consider whether it is substantively reasonable." United States v. Rodríguez-Reyes, 925 F.3d 558, 562-63 (1st Cir. 2019), petition for cert. filed, (U.S. June 18, 2019) (No. 19-9819).

A.   Procedural Reasonableness

Hassan claims he raised a procedural objection at the sentencing hearing. "To preserve a claim of error for appellate review, an objection must be sufficiently specific to call the district court's attention to the asserted error." United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017). The general statement at the sentencing hearing, "we would preserve the record for purposes of an appeal for unreasonableness of the sentence," is insufficient to preserve Hassan's specific procedural reasonableness challenges. "When a defendant does not raise a procedural objection at sentencing, the review is instead for plain error." United States v. Sosa-González, 900 F.3d 1, 4 (1st Cir. 2018), cert. denied, 139 S. Ct. 436 (2018). But even assuming in Hassan's favor that his challenge was preserved and abuse of

discretion applies,[5] see, e.g., United States v. Gierbolini-Rivera, 900 F.3d 7, 13 (1st Cir. 2018), he cannot meet his burden.

As a general matter, a sentencing court is required to calculate the applicable GSR, address any objections to the PSR, give both parties the opportunity to argue for a sentence, consider the 18 U.S.C. § 3553(a) sentencing factors, and explain the rationale behind its chosen sentence. See, e.g., United States v. Laureano-Pérez, 797 F.3d 45, 80 (1st Cir. 2015).

Hassan does not contest the GSR or the PSR. Instead, he argues that the district court "fail[ed] to properly consider the § 3553(a) factors," including the factor relating to sentencing disparity, despite accepting that the district court stated "it had considered all [these] factors." He also argues cursorily that the district court committed Kimbrough error by failing to "recognize its power" to choose a non-guideline sentence. See Kimbrough, 552 U.S. at 108-10 (recognizing sentencing courts' discretion to vary based on disagreements with the operation or basis of particular guidelines).

The district court explicitly stated that it considered all of the § 3553(a) factors; that statement "is entitled to some

---

[5] Under this standard for procedural challenges, "we afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion." Ruiz-Huertas, 792 F.3d at 226.

weight." United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010). And the district court expressly discussed a number of facts clearly germane to the § 3553(a) factors, such as: Hassan's education, employment history, mental health, prior admitted marijuana use, and lack of prior criminal history ("history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1)); the particular sexual acts depicted in the child pornography Hassan possessed ("nature and circumstances of the offense," id.); and the "re-victimization of [the] children" and "fuel[ing] demand" in the market for child pornography ("the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," id. § 3553(a)(2)(A)). The district court also expressly stated "the specific need to deter [the] defendant from future criminal behavior of this nature," echoing § 3553(a)(2)(B). On this record, there is simply no reason not to "credit the district court's statement that it considered all of the relevant sentencing factors." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011). And there is no evidence that the district court imposed the sentence based on being "completely offended by the crime," as Hassan argues, rather than based on a reasoned consideration of the relevant sentencing factors.

Hassan argues, relatedly, that the district court failed to consider "the need to avoid unwarranted sentence disparities."

See 18 U.S.C. § 3553(a)(6). Though the district court did not specifically refer to this factor during the sentencing hearing, "[a] judge need not mention every § 3553(a) factor nor intone any particular magic words," United States v. Denson, 689 F.3d 21, 28 (1st Cir. 2012), and it "need not verbalize its evaluation of each and every [§] 3553(a) factor," United States v. Reyes-Rivera, 812 F.3d 79, 89 (1st Cir. 2016); see United States v. Butler-Acevedo, 656 F.3d 97, 101 (1st Cir. 2011) ("Although the court may not have specifically referenced this factor directly . . . [t]he court subsumed sentencing disparity concerns within its overall decision."). And generally, the district court did not need to "be precise to the point of pedantry" in explaining its weighing of the § 3553(a) factors.[6] United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006); see also id. at 41 ("[S]entences that fall inside a properly calculated guideline sentencing range require a lesser degree of explanation than those that fall outside

---

[6] Hassan's discussion in his appellate brief of three allegedly illustrative First Circuit cases -- United States v. Dyer, 589 F.3d 520 (1st Cir. 2009); United States v. Rogers, 521 F.3d 5 (1st Cir. 2008); United States v. Hoey, 508 F.3d 687 (1st Cir. 2007) -- does not help his sentencing disparity argument, because "a defendant must compare apples to apples" for a well-founded disparity claim. United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015). Hassan has not explained how these cases are sufficiently similar to his own. (One, for example, was not a challenge to the reasonableness of a sentence but to the denial of a motion to suppress, featured a substantially different factual scenario, and involved a longer prison sentence. Rogers, 521 F.3d at 6.)

the guideline sentencing range . . . .").  Here, as stated, "we credit the district court's statement that it considered all of the relevant sentencing factors."[7]  Clogston, 662 F.3d at 592.

Next, as to Hassan's "argument" -- really two passing references[8] -- about Kimbrough error, it is true that "after Kimbrough, a district court makes a procedural error when it fails to recognize its discretion to vary from the guideline range based on a categorical policy disagreement with a guideline."  United States v. Stone, 575 F.3d 83, 89 (1st Cir. 2009).  But Hassan cannot point to anything showing that the district court did not understand its discretion to vary, if it so chose.  Because there is no statement by the district court showing Kimbrough error, we "review the record as a whole to assess the district court's sentencing process."  Id. (internal quotation marks omitted). Here, Hassan made a Kimbrough-based argument in his sentencing memorandum, and the district court "carefully explained why its

---

[7]  To the extent that Hassan argues the district court owed deference to the government's alleged "consideration of the [§] 3553[a] factors" in the plea negotiations, this is flatly wrong:  "[T]he starting point for a court's sentencing determination is the guideline range, not the parties' recommendations.  Thus, we have consistently refused to accord any decretory significance to such non-binding recommendations -- or even to require a sentencing court to explain why it decided to eschew those recommendations."  United States v. Cortés-Medina, 819 F.3d 566, 573 (1st Cir. 2016).

[8]  We assume arguendo, and in Hassan's favor, that this argument is not waived (despite a lack of developed argumentation). See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

chosen sentence fit both the offender and the circumstances of the offense." Clogston, 662 F.3d at 592. In this explanation of the sentence, the district court expressly stated that the guideline calculations were "advisory." This understanding is clearly relevant to a Kimbrough inquiry. See Stone, 575 F.3d at 92. There was no "struggling against the guidelines in a way that [the district court] very likely would have if it had believed it could not categorically depart," id. at 93, and indeed the district court gave a middle-of-the-guidelines sentence rather than a sentence at the bottom, indicating that it was not trying to reduce the sentence but for some mistaken understanding of its own discretion. On our review of the record, there is no indication of Kimbrough error, and so this argument fails.

B.   Substantive Reasonableness

Hassan also challenges the substantive reasonableness of his sentence. Assuming arguendo he preserved his challenge and abuse of discretion applies here, Hassan cannot meet his burden. "[R]easonableness is a protean concept," United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008), and "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes," Clogston, 662 F.3d at 592. "As we have repeatedly emphasized, a challenge to the substantive reasonableness of a sentence is particularly unpromising when the

- 11 -

sentence imposed comes within the confines of a properly calculated GSR," as Hassan accepts happened here. O'Brien, 870 F.3d at 21.

Hassan makes three categories of arguments against the substantive reasonableness of his sentence. First, he argues that the district court gave insufficient weight to certain mitigating factors and that "case law directs the court to give . . . equal significance to all of the factors." He argues that the district court's view that his child pornography possession "fuel[ed] demand and supply of a multimillion-dollar market" is wrong in this "day and age." Second, he challenges the guidelines themselves in this area (arguing, in essence, that the district court should have rejected them out of hand), and relatedly challenges an alleged sentencing disparity. Third, he argues that the sentence was greater than necessary, at least for purposes of deterrence, because of "the string of conditions . . . imposed" during the fifteen-year supervised release term.

First, Hassan's weight arguments fail. There is absolutely no "requirement that a district court afford each of the section 3553(a) factors equal prominence," as "[t]he relative weight of each factor will vary with the idiosyncratic circumstances of each case." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006). "A sentencing court is under a mandate to consider a myriad of relevant factors, but the weighting of those factors is largely within the court's informed discretion."

Clogston, 662 F.3d at 593. So, as to Hassan's argument that the district court should have given more weight to certain factors, at least including his first-time offender status,[9] "[t]hat the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." Id.; see also United States v. Majeroni, 784 F.3d 72, 78 (1st Cir. 2015) (same).

Further, Hassan's claim that the district court erred in weighing the impact on the market for child pornography is unavailing. The Supreme Court has stated in general that it is "surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand." Osborne v. Ohio, 495 U.S. 103, 109–10 (1990). We have stated specifically that "[b]y accessing child pornography with intent to view it, [a] defendant contribute[s] to the continued viability of this highly exploitative market." United States v. Blodgett, 872 F.3d 66, 71 (1st Cir. 2017); see United States v. Gall, 829 F.3d 64, 75 (1st Cir. 2016) (accepting the district court's determination that a defendant's "possession of child pornography fueled the market for

---

[9] Hassan was, indeed, a first-time federal offender; however, he admitted to searching and downloading numerous child pornography videos and images in the year before the FBI interview here, and so this case involves the first time Hassan has been caught rather than the first time he viewed and possessed child pornography.

child pornography, and thus indirectly harmed children"). There is nothing erroneous about the district court's statement about fueling demand and supply, and this was a reasonable factor for the court to weigh (especially here, where Hassan not only possessed child pornography but also made available at least two videos on a file-sharing network).

Second, Hassan's challenge to the guideline itself -- that his case "should be seen as less serious" than the relevant guideline provides -- plainly fails. "While district courts may certainly conclude that the guidelines sentencing range in child pornography cases is harsher than necessary in many cases, there is no requirement that a district court must categorically reject the child pornography guidelines based on their provenance." United States v. Aquino-Florenciani, 894 F.3d 4, 8 (1st Cir. 2018), cert. denied, 139 S. Ct. 443 (2018). "[T]he district court's broad discretion obviously includes the power to agree with the guidelines."[10] Stone, 575 F.3d at 90. We reiterate our respect for that discretion.

---

[10] Hassan seems to argue that United States v. Dorvee, 616 F.3d 174 (2d Cir. 2010), should control here. There, the Second Circuit criticized aspects of the child pornography guidelines for their "irrationality" in, inter alia, creating little distinction between "the most dangerous offenders" and "ordinary first-time offender[s]." Id. at 186-87. That case is, of course, not binding here, and Aquino-Florenciani forecloses the argument that a district court cannot follow the child pornography guidelines in imposing a substantively reasonable sentence.

Third, Hassan's argument that his sentence is substantively unreasonable because "the string of conditions . . . imposed" during the fifteen-year supervised release term would be "sufficient to protect society from any future crimes" fails. This argument asks us to exchange the district court's reasoned determination regarding a § 3553(a) factor, see 18 U.S.C. § 3553(a)(2)(C), for Hassan's own self-serving view on that factor, which we certainly will not do. Further, we have rejected similar arguments about the role of supervised release. See, e.g., Gall, 829 F.3d at 75.

On the whole, the district court "provided a plausible explanation [for the sentence], and the overall result is defensible." United States v. Crespo-Ríos, 787 F.3d 34, 37 (1st Cir. 2015) (quoting United States v. Torres-Landrúa, 783 F.3d 58, 68 (1st Cir. 2015)). That suffices for substantive reasonableness.

*     *     *

Affirmed.