# United States Court of Appeals
## For the First Circuit

No. 22-1550

UNITED STATES OF AMERICA,

Appellee,

v.

JASON COLCORD,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Gelpí, Lynch, and Rikelman,
Circuit Judges.

Andrew Levchuk on brief for appellant.

Benjamin Block, Assistant United States Attorney, and Darcie
N. McElwee, United States Attorney, on brief for appellee.

January 8, 2024

**GELPÍ**, **Circuit Judge**.    Defendant Jason Colcord ("Colcord") pled guilty to one count of knowingly accessing with intent to view material that contained over 900 child pornography images, in violation of 18 U.S.C. § 2252A(a)(5)(B).    He was sentenced to 145 months' imprisonment, near the low-end of his advisory guidelines sentencing range, followed by five years of supervised release.    Colcord challenges his within-the-range sentence, arguing that the district court's decision to not impose a downwardly variant sentence was substantively unreasonable. Having discerned no error, we affirm.

## I. BACKGROUND

We begin with a review of the relevant facts.    As this appeal follows a guilty plea, we draw the facts from the plea agreement, the change-of-plea colloquy, the uncontested portions of the presentence investigation report ("PSR"), and the sentencing hearing transcript.    See United States v. Spinks, 63 F.4th 95, 97 (1st Cir. 2023) (quoting United States v. Ubiles-Rosario, 867 F.3d 277, 280 n.2 (1st Cir. 2017)).

### A. Child Pornography Charge and Plea Agreement

In January 2020, the Federal Bureau of Investigation determined that an Internet Protocol ("IP") address located at a residence in Maine was offering to share child pornography images through the BitTorrent ("BT") network, a type of peer-to-peer communication software.    Law enforcement then downloaded,

reviewed, and confirmed that the files consisted of child pornography images and videos. On February 4, 2020, law enforcement verified that Colcord was associated with the residence and that he has an extensive criminal history including sexual abuse of a minor. Then, on February 20, 2020, law enforcement searched the residence and interviewed Colcord.

During the interview, Colcord consented to law enforcement searching his Samsung Galaxy S9 cell phone and admitted to using BT to download pornography onto his phone. On February 26, 2020, the cell phone was sent to the Department of Homeland Security Investigation ("HSI") office in Boston to extract the child pornography images from the phone. And on July 20, 2020, the HSI office in Maine was notified that 710 images and three videos of prepubescent minors engaged in sexual acts were extracted from the phone, which the PSR calculated as a total advisory guidelines quantity of 935 child pornography images. Many of the images, which Colcord's phone data indicated he viewed multiple times between December 2019 and February 2020, depicted pubescent and prepubescent girls engaged in sexually explicit conduct with adult men. Many of the images depicted minors who were under twelve years old.

On November 19, 2021, Colcord pled guilty to one count of knowingly accessing with intent to view material that contained child pornography images, in violation of 18 U.S.C.

- 3 -

§ 2252A(a)(5)(B), pursuant to a plea agreement. The plea agreement stated that "the parties agree to make a non-binding recommendation for a sentence of 120 months imprisonment" and that "the [c]ourt has the discretion to impose any lawful sentence." The district court then advised Colcord that "any recommendation made to [the court] at sentencing is not binding" which Colcord stated he understood. Colcord also agreed to waive his right to appeal a sentence of 140 months or less.

## B. Sentencing

The PSR provided the calculations for the total offense level and guideline range which Colcord did not object to. A total offense level of twenty-eight combined with a criminal history category of six resulted in an advisory guideline sentencing range of 140 to 175 months. At sentencing, Colcord and the government did as the plea agreement stated and jointly recommended a sentence of 120 months. Colcord argued that 120 months was sufficient and warranted on account of his family history and his efforts to support his mother.

Colcord appeared before the district court for a sentencing hearing on June 29, 2022. The district court noted "that since Kimbrough, a district court makes procedural error when it fails to recognize its discretion to vary from the guideline range based on a categorical policy disagreement with the guideline." The district court then acknowledged "that child

- 4 -

pornography sentencing guidelines typically do not actually reflect and determine the actual sentence[,] at least in non-production cases." After explaining this, the district court expressed that the child pornography enhancements as applied to Colcord were appropriate.

In imposing the sentence, the district court considered the factors in 18 U.S.C. § 3553(a), specifically noting the nature of the offense and the need to protect the public:

> The nature of this offense, Mr. Colcord, like all child pornography cases, shocks the conscious. The images recovered from your cell phone which number in excess of 700 depict child pornography involving abuse of pubescent and prepubescent girls, which definition meets -- which images satisfy the definition of sadomasochism, specifically prepubescent girls engaged in vaginal intercourse with adult males. So, it is almost beyond the reach of any mere mortal to capture how deeply depraved and terrorizing the creation of these images are for the sexual edification of a marketplace of consumers, and you are one such consumer.

The district court then acknowledged the toll of this offense upon the victims highlighting their pain and the "rippling of dysfunction" that will permeate the community. The district court was clear that "[i]t's not just scrolling and clicking." The district court also pointed out Colcord's role as a consumer which creates a demand and drives the production of such images. As for Colcord's personal history, the district court noted his difficult past, specifically, how his mother was heavily involved with

alcohol and drugs leading to abuse and neglect, as well as the time he spent in foster care. The district court considered Colcord's "robust" criminal history "hallmarked by violence" which included "sexual abuse of a minor, assault, violations of conditions of release, violating protective orders, failure to register as a sex offender, and domestic violence" while highlighting the "significant concern [this criminal history causes] for the risk . . . pose[d] to the public." The district court also explicitly spelled the § 3553(a) factors, including the apparent "need for just punishment to ensure adequate deterrence . . . and to protect the public from further crimes by [Colcord]." Then, the district court acknowledged Colcord's improvement with his anger management for the past two years, his lack of recent or significant drug use, and his employment. Based on each of these considerations, the district court imposed a sentence of 145 months' imprisonment followed by five years of supervised release. Colcord timely appealed this sentence.

## II. DISCUSSION

### A. Standard of Review

There are two aspects in analyzing the reasonableness of a sentence: procedural and substantive. United States v. Gomera-Rodríguez, 952 F.3d 15, 18-20 (1st Cir. 2020); United States v. Irizarry-Sisco, 87 F.4th 38, 50 (1st Cir. 2023). "If an appellant makes no claim of procedural [unreasonableness], as is

the case here, we limit our review to the substantive reasonableness of the sentence." United States v. Prosperi, 686 F.3d 32, 42 (1st Cir. 2012) (citing United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). "We review preserved substantive reasonableness claims for abuse of discretion." Gomera-Rodríguez, 952 F.3d at 20 (citing United States v. Aquino-Florenciani, 894 F.3d 4, 8 (1st Cir. 2018)); see Holguin-Hernandez v. United States, 140 S. Ct. 762, 766 (2020) (explaining that a sentence's substantive reasonableness is preserved for appellate review "where a criminal defendant advocates for a sentence shorter than the one ultimately imposed"). On the other hand, unpreserved arguments are reviewed for plain error. United States v. Hassan-Saleh-Mohamad, 930 F.3d 1, 6 (1st Cir. 2019).

## B. Substantive Reasonableness

A sentence is substantively reasonable if its rationale is plausible and resulted in a defensible outcome. Gomera-Rodríguez, 952 F.3d at 20. "There is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (citing Martin, 520 F.3d at 92). "[R]easonableness is a protean concept," Martin, 520 F.3d at 92, and "[a]s we have repeatedly emphasized, a challenge to the substantive reasonableness of a sentence is particularly unpromising when the sentence imposed comes within the confines of

- 7 -

a properly calculated" advisory guidelines sentencing range. Hassan-Saleh-Mohamad, 930 F.3d at 9 (quoting United States v. O'Brien, 870 F.3d 11, 21 (1st Cir. 2017)). "Within-guidelines sentences are entitled to a presumption of reasonableness," United States v. Rodríguez-Adorno, 852 F.3d 168, 178 (1st Cir. 2017), which Colcord has not overcome. See also Rita v. United States, 551 U.S. 338, 347 (2007) ("The first question is whether a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines. We conclude that it can.").

Colcord advances three arguments against the presumption of the substantive reasonableness of his sentence whereas the government defends the sentence as substantively reasonable. First, he argues that the district court "conflated [his own] conduct with that of those who committed the more serious crimes . . . captured in the images and videos." Second, he argues that the district court allotted insufficient weight to his personal mitigating circumstances in considering the § 3553(a) factors.[1] Third, he argues that the district court's rejection of the parties' joint recommendation of a 120-month sentence was not

_____

[1] Despite Colcord's underdeveloped argumentation concerning the weighing of § 3553(a) factors, we assume in his favor that it is not waived. See Hassan-Saleh-Mohamad, 930 F.3d at 8 n.8; United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 8 -

"convincingly address[ed]." We address the deficiency of each argument seriatim.

Colcord's conflation argument is a mischaracterization of the district court's comments on the nature of the offense. The district court's comments specifically referred to Colcord's role as a "consumer" which added to the "demand" for child pornography. The district court then emphasized how this demand results in a "rippling dysfunction" for the victims due to the Internet's propensity to "last forever." The creation and substance of the images were mentioned to highlight how consumers create the demand for the production of these images. See Hassan-Saleh-Mohamad, 930 F.3d at 9 (upholding a within-the-range sentence imposed for a non-production child pornography offense where the district court weighed the harm the defendant imposed in "fueling demand and supply" in this illicit market); Gomera-Rodríguez, 952 F.3d at 20 (same); United States v. Monroe, Nos. 19-1869, 19-1872, 2021 WL 8567708, at *2 (1st Cir. Nov. 10, 2021) (upholding an upwardly variant sentence for production and possession of child pornography). This demonstrates that the district court imposed the sentence specifically based on Colcord's own conduct as a consumer rather than the conduct portrayed in the images and videos.

Further, Congress has recognized that reducing the demand for this exploitative market is as necessary as reducing

the supply. United States v. Blodgett, 872 F.3d 66, 71 (1st Cir. 2017); cf. Osborne v. Ohio, 495 U.S. 103, 109-10 (1990) (recognizing that it is "surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"). The Internet has become a mechanism for defendants to view these distressing images "with virtual anonymity" and re-victimize these children "again when these images of their sexual assault are traded over the Internet in massive numbers by like-minded people across the globe." H.R. Rep. No. 112-638 (2012) (quoting U.S. Dep't of Just., Nat'l Strategy for Child Exploitation Prevention & Interdiction: A Report to Congress (2010)). The United States Sentencing Commission reported that, in 2019, "non-production child pornography offense involved a median number of 4,265 images, with some offenders possessing and distributing millions of images and videos." U.S. Sent'g Comm'n, Federal Sentencing of Child Pornography Non-Production Offenses 4 (2021). "We add, moreover, that the defendant's attempt to downplay the severity of his conduct because he was a viewer of vile material, not a producer or distributor of it, is unpersuasive." Blodgett, 872 F.3d at 71.

Colcord relatedly argues that the district court's decision not to impose a downwardly variant sentence for his non-production offense, as other courts have done based on a

categorical policy disagreement, is in error.[2] At sentencing, the district court explicitly acknowledged its ability to impose a downwardly variant sentence based on a categorical policy disagreement, going so far as to note the 2012 Sentencing Commission report which expressed that child pornography sentencing guidelines may inaccurately apply "so many enhancements" in non-production cases. Yet, even in light of this discretion, the district court expressed that the enhancements applied here were warranted due to the quantity of images accessed "involving abuse of pubescent and prepubescent girls," the nature of the offense, and its effect on society, reflecting the district court's thoughtfulness in choosing a sentence that "fit both the

---

[2] There are two aspects to this specific argument that we briefly address. First, this argument was not preserved below and is subject to plain error review. But even if we assume in Colcord's favor that the argument is preserved and abuse of discretion applies, this argument still fails for the reasons we discuss. Hassan-Saleh-Mohamad, 930 F.3d at 6.

Second, in making this argument, Colcord makes a cursory reference to Kimbrough error and yet misunderstands the circumstances in which a district court can be said to have committed this error. Colcord did not pinpoint any specific comment to show that the district court did not understand its discretion to vary. Instead, Colcord argues that it was error for the district court to choose to not have a categorical policy disagreement with the guidelines as other district courts have done. We foreclose this line of reasoning by reiterating what we said before: "While district courts may certainly conclude that the guidelines sentencing range in child pornography cases is harsher than necessary in many cases, there is no requirement that a district court must categorically reject the child pornography guidelines based on their provenance." Aquino-Florenciani, 894 F.3d at 8.

- 11 -

offender and the circumstances of the offense." Clogston, 662 F.3d at 592. The district court's awareness of its capacity to impose a downwardly variant sentence is exhibited in the record and its decision to not impose such a sentence is not error. United States v. Stone, 575 F.3d 83, 89-90 (1st Cir. 2009) (explaining that a district court only commits Kimbrough error when "it fails to recognize its discretion to vary from the guideline range" but not when it chooses to impose a sentence within the guideline range (citations omitted)). We have recognized the broad discretion that district courts possess to agree with the guidelines and continue to do so. Stone, 575 F.3d at 90.

Next, Colcord's weight argument falls flat because § 3553(a) does not mandate courts to apply a certain weight to each factor but only to consider each factor in imposing a sentence "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). "[T]he weighting of those factors is largely within the court's informed discretion." Clogston, 662 F.3d at 593. And Colcord fails to mention any case stating otherwise. See United States v. Morales-Negrón, 974 F.3d 63, 66-67 (1st Cir. 2020) ("But 'a disagreement with the district court's weighing of the different sentencing factors' does not alone constitute error." (quoting United States v. Contreras-Delgado, 913 F.3d 232, 242 (1st Cir. 2019))). Moreover, the sentencing transcript demonstrates that

the district court considered Colcord's past, highlighting his rough childhood and his significant criminal history. While Colcord surely would want the district court to give greater weight to his personal mitigating circumstances, the district court was entirely within its discretion to find that these mitigating factors were outweighed by the seriousness of the offense, Colcord's criminal history, and the need to protect the public. Gall v. United States, 552 U.S. 38, 52 (2007) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." (quoting Koon v. United States, 518 U.S. 81, 113 (1996))). "That the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." Clogston, 662 F.3d at 593.

Lastly, Colcord's argument that he should have received a sentence of 120 months also fails to overcome the presumption of reasonableness of his sentence. He simply argues that the district court should have imposed a 120-month sentence as both parties recommended and that the district court rather chose to impose 145 months because of its personal disgust towards the offense. However, "[t]he customary rule is that the district court is not

bound by the parties' recommendations as to the length of the sentence to be imposed." United States v. Rijos-Rivera, 53 F.4th 704, 711 (1st Cir. 2022) (citing United States v. Mulero-Vargas, 24 F.4th 754, 759 (1st Cir. 2022)). Nor is there evidence in the record of "personal disgust" by the district court as Colcord claims. See Hassan-Saleh-Mohamad, 930 F.3d at 7 ("And there is no evidence that the district court imposed the sentence based on being 'completely offended by the crime,' . . . rather than based on a reasoned consideration of the relevant sentencing factors.").

Colcord also asserts that the district court did not adequately explain why the recommended 120-month sentence would not have sufficed to meet the goals of sentencing. He points out that his pretrial release conditions proved he posed minimal danger to the community, therefore, imposing a greater sentence due to such purported danger now is inconsistent.[3] This line of

---

[3] Under an abuse of discretion standard, the burden a defendant must carry to overturn a sentence is an uphill climb and especially so when the sentence imposed is within the advisory guidelines range. That suffices to say that differences in findings of a defendant's danger to the community -- which is only one factor of many to consider at sentencing -- for release prior to sentencing and at sentencing is not enough alone to overcome the highly deferential review of a sentence. United States v. De la Cruz-Gutiérrez, 881 F.3d 221, 227 (1st Cir. 2018) (emphasizing the "heavy burden" a defendant must carry to "[s]uccessfully challeng[e] the substantive reasonableness of a sentence"); Hassan-Saleh-Mohamad, 930 F.3d at 7 ("And generally, the district court did not need to 'be precise to the point of pedantry' in explaining its weighing of the § 3553(a) factors." (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006)).

reasoning, however, ignores the different factors that district courts consider when deciding to release or detain a defendant before trial versus imposing a sentence. In deciding to release or detain a defendant before trial, the district only considers whether "the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1). However, during sentencing, knowledge concerning the specific offense alongside the defendant's personal history and other factors are taken into consideration to determine the appropriate sentence. 18 U.S.C. § 3553(a) (listing out factors). Accordingly, during sentencing, the district court is within its traditional, discretionary role to utilize the PSR, arguments from counsel, and facts to impose a sentence that is sufficient but not greater than necessary. Koon, 518 U.S. at 113 (explaining the breadth of discretion that lies with the sentencing judge).

At sentencing, the district court found that Colcord's extensive criminal history which involved "sexual abuse of a minor, assault, violations of conditions of release, violating protective orders, failure to register as a sex offender, and domestic violence" combined with the effect of this offense warranted a with-the-range sentence of 145 months. In rejecting Colcord's request to impose a downwardly variant sentence of 120 months, the district court explained:

> [I]t's rare that I see a defendant stand before me for sentencing for this type of offense who has a criminal history -- much of a criminal history, frankly, never mind a criminal history as robust as yours and one that is hallmarked by violence, violation of court orders, including violations of conditions of release, all of which give me significant concern for the risk you pose to the public. For those reasons, I'm not going to impose a downwardly variant sentence in this case.

This leads us to conclude that the district court sufficiently addressed its decision not to vary downward considering relevant sentencing factors, including Colcord's significant criminal history and risk to the public. Thus, the district court's explanation concerning these factors, the nature of the offense, and Colcord's effect as a proponent of demand for child pornography images, certainly provided a plausible rationale that resulted in a defensible within-the-range sentence.

### III. CONCLUSION

For the reasons stated, Colcord's substantive reasonableness challenge fails, and his sentence is **affirmed**.